IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **Ms. Stella Marion Reeves** | * | |
| **Plaintiff** | * | |
| v. | * | Case No. 8:21-CV-01674-PWG |
| **Dimensions Health Corporation d/b/a University of Maryland Capital Region Health** | * | JURY DEMAND |
| | * | |
| **Defendant** | * | |
| _____/ | | |

## FIRST AMENDED COMPLAINT

Plaintiff, Stella Marion Reeves ("Plaintiff" or "Reeves"), by and through her attorneys, states a First Amended Complaint against Defendant Dimensions Health Corporation d/b/a University of Maryland Capital Region Health ("Defendant" or "UM Capital") pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq., and demands a jury trial, as follows:

### Introduction, Venue, and Jurisdiction

1. Plaintiff Stella Marion Reeves ("Plaintiff" or "Reeves") is a resident of Prince George's County, Maryland. Defendant UM Capital has its principal headquarters located in in Prince George's County, Maryland.

2. This Court has Federal question jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains a place of business in this judicial district and all of the complained of events occurred in the State of Maryland.

4. On November 28, 2018, Plaintiff filed a charge of retaliation, harassment and disability discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Prince George's County Human Relations Commission ("PGHRC").

5. On March 11, 2020, the EEOC issued a Notice of Right to Sue to the Plaintiff for this charge.

6. On May 23, 2021, Plaintiff filed a timely *pro se* Complaint in the Circuit Court of Prince George's County.

7. On July 7, 2021, Defendant removed this case from the Circuit Court for Prince George's County, Case No. CAL21-06140.

8. Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

9. Based upon Defendant's harassment and retaliation, Plaintiff seeks an award of appropriate relief under the ADA, including attorneys' fees and costs as provided by the ADA.

## FACTS

10. Defendant University of Maryland Capital Region Health (formerly Dimensions Healthcare System) is a not-for-profit health care system serving Prince George's County and the surrounding areas.

11. Prior to seeking employment with Defendant UM Capital, Plaintiff had retired from teaching in the Prince George's County Public School System for twenty-five years, provided a home for over ninety therapeutic foster children for thirty-two years, been a licensed ordained minister for over thirty years, and worked as an ER Operator at MedStar Southern Maryland Hospital Center.

12. In early 2018, Plaintiff suffered a severe head injury and traumatic head concussion

during a serious car accident. Plaintiff was diagnosed with traumatic vertigo and suffers from bouts of room spinning vertigo with nausea, fainting, dizziness, light headedness, minor mental impairment, short term memory loss and hearing loss.

13. In applying for a position at the Prince George's County Medical Center, Plaintiff fully disclosed her medical condition to Ms. Peace, the Human Resources Department Hiring Supervisor, and submitted medical documentation which included a diagnosis and a description of her symptoms.

14. According to Ms. Peace, Plaintiff received one of the highest scores on the entrance test during the application process. Ms. Peace hired Plaintiff on the spot and assured her that Defendant would be able to accommodate Plaintiff's disability by allowing her to sit at work and take breaks if she felt dizzy.

15. On May 1, 2018, Plaintiff began her employment with Defendant as a Unit Secretary in the Surgical Services Department in the now closed Prince George's County Medical Center. The managers in her unit, including Ms. Schallery Colbert, the Operating Room Director, Ms. Sheila George, the Head Operating Room Nurse and Department Manager, and Ms. Lystra Caruth, the O.R. Nurses Supervisor, were fully aware of Plaintiff's disability.

16. Plaintiff was told that Ms. Caruth would be responsible for training her during the 90-day probationary period. In order to learn the correct policies and procedures and medical equipment and terminology, Plaintiff took many notes and would refer to her notebook throughout her training. However, when Plaintiff would refer to her notes, ask Ms. Caruth a question or to repeat something, Ms. Caruth would respond in an angry and belligerent manner by directing nasty, slanderous and discriminatory slurs at the Plaintiff. For

example, Ms. Caruth regularly told that her condition was causing Plaintiff to be very slow, dumb, stupid, ignorant and/or mentally challenged. Ms. Caruth would also continually tell Plaintiff to take more of her medication because her dosage was wearing off.

17. In May, 2018, Plaintiff complained to Ms. Schallery Colbert, the Operating Room Director, that Ms. Caruth was being extremely disrespectful and making "nasty slurs" about her condition. Plaintiff asked Ms. Colbert if Ms. Caruth was alright and whether she (Plaintiff) had done anything to offend Ms. Caruth. Plaintiff told Ms. Colbert that she would try to make peace with Ms. Caruth.

18. However, throughout her employment, Ms. Caruth would publicly humiliate Plaintiff by openly and continually making these offensive, abusive and discriminatory remarks to the Plaintiff in front of her co-workers and patients.

19. In late May/early June, 2018, a few other UM Capital employees were present when Ms. Caruth told Plaintiff that "everyone knows you are stupid." Plaintiff then complained to Ms. Colbert about abusive and disrespectful manner in which Ms. Caruth was treating the Plaintiff. One of these employees, Ms. Tamani Nichols, the Ortho Coordinator and Director, even got into a verbal altercation with Ms. Caruth over her abusive and disrespectful treatment of the Plaintiff. Ms. George was present for the entire incident.

20. Because Plaintiff relied upon her training notes and use her cell phone to check the spelling of medical terminology, Ms. Caruth continued to mock Plaintiff with open insults, verbally attacking Plaintiff, while continuously putting her down in front of her peers, as well as the patients, making everyone aware of Plaintiff's condition. She would continually call Plaintiff retarded and tell Plaintiff that her condition was causing her to

be very slow, dumb, stupid, ignorant and/or mentally challenged.

21. Plaintiff verbally complained to Ms. Colbert and Ms. George about the abusive treatment and harassment to which she was subjected by Ms. Caruth on numerous occasions. Plaintiff repeatedly asked if someone else could be assigned to train her.

22. However, UM Capital management ignored these complaints by failing to take any kind of remedial action. Ms. Caruth responded to these complaints by becoming even less cooperative in training the Plaintiff. For example, Ms. Caruth would disappear for hours at a time and ignore emergency requests for assistance on emergency procedures. The abusive behavior and harassment continued as Ms. Caruth continued to direct slurs at Plaintiff about her mental capacity and condition.

23. As a direct result of the harassment to which she was subjected, Plaintiff became severely depressed and suffered from severe emotional distress, mental anguish, stress, anxiety, and loss of enjoyment of life.

24. Finally, after going back to Ms. George, once again, in tears, with the same complaint and concerns, Ms. George advised Plaintiff to put her concerns and complaints in writing and submit them to the Director, the H.R. Department and to Ms. George as soon as possible.

25. On July 13, 2018, Plaintiff hand-delivered a detailed written complaint about this disability discrimination and harassment to the Human Resources Department, Ms. Schallery Colbert, and Ms. Sheila George which, among other things, stated that she was being "horribly Discriminated against through ongoing open verbal attacks of mental harassment and abuse," that the "humiliation and intimidation is so emotionally abusive, that it has caused [Plaintiff] to run out of the O.R. many times and into the ladies room in tears," and that this is a "serious act of discrimination [in violation] of the disability act

through harassment, because of this minor impairment that I am suffering with, but for some reason it is being totally ignored and allowed to continue, even after many, many complaints have been made."

26. On July 20, 2018, Plaintiff was discharged by Ms. Colbert for not meeting the expectations of her position. Ms. Colbert specifically claimed that Plaintiff was being terminated because she had incorrectly prepared a posting for an emergency procedure even though she already knew the posting had been prepared by Dr. Kahn, one of the hospital's surgeons, when Ms. Caruth had failed to respond to an emergency alert. In fact, Dr. Kahn previously told Ms. Colbert that he had completed the posting to which she was referring.

27. Plaintiff contends that Defendant's stated reason for her termination are false and pretextual and intentionally designed to hide the true reason for her termination. Plaintiff was terminated in retaliation for complaining about disability discrimination and harassment in violation the ADA's anti-retaliation provisions, 42 U.S.C. § 12203(a).

28. Approximately five weeks after she was discharged, Plaintiff was contacted by the Human Resources Department (Ms. Peace) and offered Plaintiff a different position at a lower wage and a new location. Ms. Peace told Plaintiff that this was an opportunity for her to make a fresh start under new management and that Defendant would be able to accommodate Plaintiff's disability.

29. In the interim, on information and belief, Ms. Caruth and Ms. George were both fired and/or forced to resign by Defendant UM Capital.

30. Plaintiff was hired as a Patient Access Representative ("PAF") at the Defendant's Bowie Health Center on August 24, 2018. In addition to registering and posting patients,

Plaintiff was required to spend more than 85% of the day walking in and out of patient rooms and standing.

31. Plaintiff eventually fainted and was rushed to the emergency room where she was ordered to stay overnight for testing and observation. Plaintiff's physician subsequently ordered Plaintiff to stay out of work for 4 days.

32. Upon returning back to work, Plaintiff's supervisor, Ms. Guion, requested that Plaintiff report to her office and after shutting the window and door, brought up the issue of the complaint Plaintiff had filed against her. ex-supervisor, Ms. Caruth. Ms. Guion told Plaintiff that she had heard that Plaintiff had gotten Ms. Caruth fired; Plaintiff responded by politely telling Ms. Guion, that she did not get Ms. Caruth terminated but rather Ms. Caruth had gotten herself terminated. Ms. Guion then informed Plaintiff that Ms. Caruth was very well known around the company and that they were very good friends.

33. Thereafter, Ms. Guion's demeanor towards the Plaintiff changed dramatically, and she became extremely hostile in her interactions with the Plaintiff. Less than two weeks later, Plaintiff was terminated on October 3, 2018.

34. In her memorandum recommending Plaintiff's termination, Ms. Brooks, the Director of Patient Services, falsely claimed that she had five different discussions with the Plaintiff about alleged errors on five different dates in September 2018, and that Plaintiff had received training for two weeks at Prince George's Hospital prior to coming out to Bowie. Ms. Guion joined Ms. Brooks recommending the Plaintiff's termination.

35. Plaintiff contends that Defendant's stated reasons for her termination are false and pretextual and intentionally designed to hide the true reason for her termination. Plaintiff was terminated in retaliation for her previous complaints about disability discrimination

and harassment (and the concomitant termination of Ms. Caruth's employment) in violation the ADA's anti-retaliation provisions, 42 U.S.C. § 12203(a). Upon information and belief, Plaintiff's immediate supervisor (Ms. Guion) learned of Plaintiff's protected activity (i.e., complaints of disability discrimination) when Plaintiff was out on medical leave in late September 2018.

36. The acts and conduct described above have caused Plaintiff to suffer and experience damages, including lost wages and benefits, mental anguish, emotional pain and suffering, stress, anxiety, depression and loss of enjoyment of life.

## **CAUSES OF ACTION**

### **COUNT I**
### **(ADA – Harassment)**

37. Plaintiff incorporates paragraphs 1-36 as set forth above, with the same force and effect as though fully set forth herein.

38. This Count is brought under the ADA, 42 U.S.C. § 12101 et seq., and reference is made to the ADA in its entirety.

39. At all times, Plaintiff was an employee and person within the meaning of the ADA.

40. At all times, Defendant was and is an employer within the meaning of the ADA, as it employs more than 15 full-time employees from at least 2016 through the present.

41. At all relevant times, the Plaintiff was a qualified individual with a disability within the meaning of the ADA, because, as described more fully in paragraph 12, above: (1) she has physical and mental impairments that substantially limit one or more of his major life activities; (2) she has a record of such an impairment; and/or (3) she is regarded as having such an impairment.

42. The aforementioned facts demonstrate that Plaintiff was subjected to severe and pervasive

harassment based on her disability by being continually subjected to verbally abusive, offensive and discriminatory statements and slurs based on her disability throughout employment her employment in Surgical Services Department, and being discharged in retaliation for complaining about the unwelcome harassment (as outlined in paragraphs 18-20), which created an intimidating, hostile and offensive working environment and which adversely affected the terms, conditions and privileges of Plaintiff's employment. Defendant's management was fully aware of the unlawful harassment to which Plaintiff was subjected and failed to take effective remedial action.

43. The foregoing harassment of the Plaintiff by Defendant UM Capital was based on her disability.

44. The acts and conduct described above have caused Plaintiff to suffer and experience damages, including lost wages and benefits, mental anguish and pain and suffering, loss of enjoyment of life.

45. As a result of Defendant's unlawful harassment under the ADA, Plaintiff has, in addition, suffered and continues to suffer, among other things, from lasting and irreparable injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation.  Plaintiff is entitled to recover damages for such injuries from Defendant.

46. Plaintiff is entitled to recover monetary and other damages, punitive damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from Defendant, under the ADA.

47. Defendant's unlawful conduct was intentional and was carried out with malice or reckless

indifference to Plaintiff's protected rights to be free from unlawful harassment and discrimination.

## COUNT II
### (ADA Retaliation)

48. Plaintiff incorporates paragraphs 1-47 as set forth above, with the same force and effect as though fully set forth herein.

49. Section 12203 of the ADA prohibits an employer from taking any adverse action against a person because such person "has opposed any act or practice made unlawful by this chapter or because such individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(a).

50. Plaintiff exercised her rights under the ADA by repeatedly complaining about her supervisor's unlawful harassment and disability discrimination, including but not limited to, submitting a detailed written complaint on July 13, 2018.

51. Plaintiff was performing in a satisfactory manner, and but for complaining about her supervisor's harassment, would not have been discharged on either July 20, 2018 or October 3, 2018.

52. Plaintiff contends that Defendant's stated reasons for both of the terminations are false and pretextual and willfully intended to hide the true reason for these terminations. Plaintiff was terminated in retaliation for complaining about disability discrimination and harassment in violation the ADA's anti-retaliation provisions, 42 U.S.C. § 12203(a).

53. As a result of Defendant's unlawful retaliation under the ADA, Plaintiff has, in addition, suffered lost wages and benefits, and continues to suffer, among other things, from lasting and irreparable injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, depression, emotional pain, suffering, inconvenience,

loss of enjoyment of life, lasting embarrassment and humiliation. Plaintiff is entitled to recover damages for such injuries from Defendant.

54. Plaintiff is entitled to recover monetary and other damages, punitive damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from Defendant, under the ADA.

55. Defendant's unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful retaliation under the ADA.

## **PRAYER**

WHEREFORE, Plaintiff requests Judgment as follows:

(a) Enter judgment, declaratory and otherwise, in favor of the Plaintiff with respect to each Count set forth in this lawsuit, and such other and further relief as this Court may deem just and proper.

(b) Order Defendant to pay Plaintiff all lost wages and benefits as a result of any retaliatory actions taken against Plaintiff as determined by the Court to be due and owing, under the ADA;

(c) Order Defendant to make whole the Plaintiff by providing compensation for past and future nonpecuniary losses, resulting from the unlawful employment practices complained of above, including emotional pain, suffering, depression, anxiety, loss of enjoyment of life, humiliation, and other physiological and psychological symptoms and conditions, in amounts to be determined at trial, but in no event less than $300,000.00;

(d) Order Defendant to make the Plaintiff whole by providing Plaintiff with compensation

for any pecuniary losses, together with prejudgment interest, in amounts to be determined at Trial, but in no event less than $300,000.00, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices of Defendant;

(e) Order Defendant to pay the Plaintiff punitive damages for its malicious and reckless disregard of the Plaintiff's protected employment rights under the ADA, in amounts to be determined at trial, but in no event less than $300,000.00;

(f) Award Plaintiff her attorneys' fees and costs in pursuing this action;

(g) Award Plaintiff pre-judgment and post-judgment interest on any sums determined due and owing from Defendant, including interest on attorneys' fees and costs;

(h) Grant Plaintiff any additional relief that the Court deems appropriate and just.

Respectfully submitted,

*/s/ Jordan S. Liew* _____
Howard B. Hoffman, # 25965
Jordan S. Liew, #20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Ste. 205
Rockville, Maryland 20852
(301) 251-3752
(301) 251-3753 (fax)
hhoffman@hoholaw.com

*/s/ (with permission)*
Bradford W. Warbasse, # 07304
Attorney at Law
401 Washington Avenue
Suite 400
Towson, Maryland 21204
(443) 862-0062
warbasselaw@gmail.com

## **Jury Demand**

The Plaintiff, by his attorney, hereby demands a jury trial as to all issues triable by a jury.


*/s/*_____
Jordan S. Liew

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September 2021, a copy of the foregoing First Amended Complaint, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

_____/s/_____
Jordan S. Liew
