IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **STELLA MARION REEVES,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG 21-cv-1674 |
| **DIMENSIONS HEALTH CORP.,** d/b/a UNIVERSITY OF MARYLAND CAPITAL REGION HEALTH, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiff Stella Marion Reeves seeks relief from her former employer, Defendant Dimensions Health Corporation, doing business as University of Maryland Capital Region Health ("UM Capital), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. In her two count Amended Complaint, ECF No. 20 ("Complaint"), Ms. Reeves alleges that she was harassed at work due to her disability (Count I), and that she was terminated in retaliation for complaining of that alleged harassment (Count II). Pending before me is UM Capital's Partial Motion to Dismiss Count I of Plaintiff's First Amended Complaint, ECF No. 29 ("Motion"). UM Capital seeks dismissal of Ms. Reeves's harassment claim under Fed. R. Civ. P. 12(b)(6) because, it argues, Ms. Reeves failed to exhaust her administrative remedies with respect to her harassment claim. UM Capital's Motion is fully briefed,[1] and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons explained below, UM Capital's Motion is DENIED.

---

[1] ECF No. 30, Plaintiff's Opposition to Defendant's Partial Motion to Dismiss Count I of Plaintiff's First Amended Complaint (And Request for Rule 56(d) Discovery), ("Opposition"); ECF No. 31, Reply to Plaintiff's Opposition to Defendant's Partial Motion to Dismiss Count I of Plaintiff's First Amended Complaint, ("Reply").

**BACKGROUND**

In early 2018, prior to her employment with UM Capital, Ms. Reeves "suffered a severe head injury and traumatic head concussion during a serious car accident." Compl. ¶ 12. As a result of her accident, Ms. Reeves was diagnosed with traumatic vertigo, which causes her to experience "bouts of room spinning vertigo with nausea, fainting, dizziness, light headedness, minor mental impairment, short term memory loss and hearing loss." *Id.*

Ms. Reeves began working for UM Capital as a "Unit Secretary in the Surgical Services Department" of the Prince George's County Medical Center on May 1, 2018. *Id.* ¶ 15. Ms. Reeves alleges that she disclosed her disability during the application process for that position, and that the Human Resources Department Hiring Supervisor assured her that UM Capital would "accommodate Ms. Reeves's disability by allowing her to sit at work and take breaks if she felt dizzy." *Id.* ¶ 14. Ms. Reeves further alleges that the "managers in her unit, including Ms. Schallery Colbert, the Operating Room Director, Ms. Sheila George, the Head Operating Room Nurse and Department Manager, and Ms. Lystra Caruth, the O.R. Nurses Supervisor, were fully aware of Plaintiff's disability." *Id.* ¶ 15.

During her 90-day probationary period at her new job, Ms. Reeves alleges that Ms. Caruth, the manager who was assigned to train Ms. Reeves, regularly responded to any questions Ms. Reeves asked, "in an angry and belligerent manner" and made frequent remarks about Ms. Reeves's disability. *Id.* ¶ 16. Ms. Caruth allegedly told Ms. Reeves that her disability had made her "very slow, dumb, stupid, ignorant and/or mentally challenged" and advised Ms. Reeves that she should "take more of her medication because her dosage was wearing off." *Id.* Sometimes, Ms. Caruth verbally abused Ms. Reeves in front of co-workers and patients. *Id.* ¶ 16–19.

Ms. Reeves alleges that she made numerous verbal complaints about Ms. Caruth's abusive behavior to the other managers on her unit, but that her complaints were ignored and that Ms. Caruth continued verbally abusing and harassing her. Compl. ¶¶ 21–22. Ms. Reeves alleges that she was extremely upset by Ms. Caruth's treatment and "became severely depressed and suffered from severe emotional distress, mental anguish, stress, anxiety, and loss of enjoyment of life." *Id.* ¶23. Eventually, after Ms. Reeves made yet another complaint, Ms. George advised Ms. Reeves to put her concerns in writing and submit them to her and to the director of H.R. *Id.* ¶ 24. Ms. Reeves then submitted a written complaint that alleged that she was being "horribly [d]iscriminated against through ongoing open verbal attacks of mental harassment and abuse," and that the abuse constituted a "serious act of discrimination [in violation] of the disability act." *Id.* ¶ 25.

One week[2] after submitting her written complaint, Ms. Reeves was terminated for "not meeting the expectations of her position." *Id.* ¶ 26. Ms. Reeves believes that Ms. Caruth was either terminated or forced to resign shortly thereafter. *Id.* ¶ 29.

Five weeks after she was terminated, UM Capital hired Ms. Reeves back in a different role at a lower rate of pay and at a different location. Compl. ¶ 28. Ms. Reeves alleges that the new job required her to spend much of the day on her feet, and that she "eventually fainted" and then ordered to stay out of work for several days. *Id.* ¶¶ 30-31. When she returned, Ms. Reeves alleges that her new supervisor, Ms. Guion, initiated a private conservation in which she told Ms. Reeves "that she had heard that [she] had gotten Ms. Caruth fired" by making complaints about her. *Id.* ¶ 32. Ms. Guion also informed Ms. Reeves that "Ms. Caruth was very well known around the

---

[2] The Charges filed with the EEOC allege that she was terminated one day after Ms. Reeves's complaint.

3

company and that they were good friends." *Id.* After that conversation, Ms. Reeves alleges that Ms. Guion became hostile towards her. *Id.* ¶ 33.

Ms. Reeves was terminated for a second time two weeks after her alleged conversation with Ms. Guion regarding Ms. Caruth. *Id.* The memorandum recommending Ms. Reeves's termination stated that the Director of Patient Services had had "five different discussions with the Plaintiff about alleged errors on five different dates in September 2018, and that Plaintiff had received training for two weeks at Prince George's Hospital prior to coming out to Bowie." *Id.* ¶ 34. Ms. Reeves alleges that those claims are false and that she was in fact terminated in retaliation for complaining about Ms. Caruth's harassment in violation of the ADA. *Id.* ¶¶ 34–35.

Ms. Reeves "filed a charge of retaliation, harassment and disability discrimination with the United States Equal Employment Opportunity Commission ('EEOC') and the Prince George's County Human Relations Commission ('PGHRC')" on November 28, 2019. Compl. ¶ 4. On March 11, 2021, the EEOC sent Ms. Reeves a Notice of Right to Sue. ¶ 5.[3]

Ms. Reeves timely filed this action on September 15, 2021. She asserts in Count I that she was harassed based on her disability in violation of the ADA, and that UM Capital failed to take any remedial action despite her numerous complaints. Compl. ¶¶ 37–47. In Count II, Ms. Reeves asserts that she was terminated in retaliation for her complaints about Ms. Caruth's harassment in violation of Section 12203 of the ADA. *Id.* ¶¶ 48–55.

UM Capital now moves to dismiss Count I of the Complaint because, it alleges, Ms. Reeves failed to exhaust her administrative remedies with respect to her harassment claim. In support of its argument, UM Capital relies on four documents, which are attached as Exhibits to its Motion. Two of those documents are Charges of Discrimination that were filed with the EEOC on

---

[3] The Complaint mistakenly alleges that the letter from the EEOC is dated March 11, 2020.

4

November 28, 2018. ECF Nos. 29-2 & 29-3 (the "Charges"). The Charges are largely identical—both indicate that Ms. Reeves marked the box for "Retaliation" as the basis for her claim of discrimination, and both contain the same description of the Ms. Reeves's claims, which reads as follows:

> I.   I began my employment with [UM Capital] in May 2018 as OR Secretary On July 15, 2018, I complained that I was being discriminated against because of my disability by my Supervisor. The following day, I was discharged. An investigation was conducted and as a result, I returned to work on or about August 26, 2018. Under my new Supervisor, I was constantly reminded about my complaint of discrimination and accused of getting my prior supervisor fired. On October 15, 2018, I was discharged.
>
> II.  I was advised that I was discharged for making one mistake.
>
> III. I believe I was discriminated against in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding my discharge.

*Id.*

Each of the Charges includes different handwritten additions. In one, the handwritten addition indicates that the Charge was presented both the EEOC and to a "a state or local Fair Employment Practices Agency (FEPA)." *See* ECF No. 29-2. In the other, an additional handwritten "X" checks the box for "Disability" in addition to the box for "Retaliation" in the section indicating what type of discrimination is alleged. *See* ECF No. 29-3. UM Capital seems to suggest that Ms. Reeves herself "altered" the Charge that checks off both "Retaliation" and "Disability." *See* Motion to Dismiss at 7 ("The Charge filed with the EEOC alleged discrimination based on retaliation, only . . . . Curiously, Plaintiff attached an altered version of the Charge to her May 28, 2021 Complaint"). But that suggestion is unfounded—the slightly different position of the date stamp on each Charge demonstrates that both versions were received by the EEOC.

The third document attached to UM Capital's Motion to Dismiss is the Determination on the merits of Ms. Reeves's Charge (or Charges) by PGHRC ("Determination"). ECF No. 29-4. The Determination concludes that PGHRC's "investigation revealed that the Complainant's allegation that the Respondent subjected her to retaliation is without merit." *Id.* at 3. The Determination makes multiple references to Ms. Reeves's complaint "about being discriminated against by her Supervisor because of her disability," but it does not reach any conclusion with respect to the alleged disability discrimination. *Id.* at 2–4.

Finally, UM Capital relies on the Notice of Right to Sue that the EEOC sent to Ms. Reeves on March 11, 2021 ("Notice"). ECF No. 29-5. The Notice concludes that PGHRC's investigation of Ms. Reeves's charge (which the EEOC reviewed in response to Ms. Reeve's request for a Substantial Weight Review) was not deficient and dismisses Ms. Reeves's charge with the EEOC. *Id.*

Additional facts will be supplied below as needed.

## STANDARD OF REVIEW

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) if it "fails to state a claim upon which relief can be granted." The purpose of the rule is to test the sufficiency of the complaint, not to address its merits. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The claim for relief must be plausible, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

When reviewing a motion to dismiss, the Court must accept the well pleaded facts in the operative complaint and also may "consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013) (citing *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). And where the allegations of the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). If the Court considers matters outside the pleadings, it must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of matters of public record without converting a motion to dismiss into motion for summary judge. *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

**DISCUSSION**

UM Capital contends that Ms. Reeves failed to exhaust her administrative remedies with respect to her ADA Harassment claim as evidenced by the absence of "any facts relating to an ADA harassment claim" in the Charges, and further evidenced by the fact that "PGHRC and EEOC limited the investigation to [Ms. Reeves's] retaliation claim." Motion to Dismiss at 9–12 (citing the Determination). Ms. Reeves counters that the contents of the Charges was sufficient to put UM Capital on notice of her claim that she was harassed due to her disability, despite not explicitly stating that she had been "harassed" within the meaning of the ADA. Opp. at 4–6.

A plaintiff alleging violation of the ADA is required to exhaust their administrative remedies prior to filing suit in federal court. *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). Administrative exhaustion requires the party complaining of discrimination to file a charge with the EEOC, which serves the dual purpose of "ensur[ing] that the employer is put on notice of the alleged violations, thereby giving it a change to address the alleged discrimination prior to litigation," and of "encouraging quicker, less formal, and less expensive resolution" of the dispute via the administrative process. *Id.* (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). Although administrative exhaustion under the ADA is no longer considered jurisdictional, it is still a mandatory procedural rule. *Clark v. Saval*, No. CV DLB-19-3519, 2020 WL 7640819, at *3 (D. Md. Dec. 23, 2020) (citing *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850–51 (2019)).

The Fourth Circuit has held that "the scope of the plaintiff's right to file a federal lawsuit is determined by" the contents of the charges filed with the EEOC. *Sydnor*, 681 F.3d at 593 (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843 (2019)). To assess whether claims are administratively exhausted, the Court must determine "whether the filed claims are reasonably related to those raised in the administrative charge and can be expected to follow from a reasonable administrative investigation." *Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 439 (D. Md. 2021) (quoting *Sydnor*, 681 F.3d at 594). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). When a plaintiff "brings a formal charge that differs in time frames, actors, and discriminatory conduct from the central allegations averred in [the] lawsuit,

8

[the] [p]laintiff has failed to exhaust the claim administratively." *Membreno*, 517 F. Supp. at 439 (citing *Sydnor*, 681 F.3d at 593).

The contents of an administrative charge need not, however, be identical to the claims eventually filed in court. *Id.* at 438. Instead, where the allegations of a complaint "match the discriminatory bases and kinds of liability alleged in the EEOC charge, a plaintiff has sufficiently exhausted her administrative remedies." *Id.* "This is so because procedural requirements should not become a tripwire for hapless plaintiffs as the remedial scheme must be one in which laypersons, rather than lawyers, are expected to initiate the process." *Id.* Consistent with that principle, Ms. Reeves reminds the Court that "the pleadings of pro se parties are to be construed liberally." Opp. at 3 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Ms. Reeves's Charges, which she filed pro se, are "admittedly short," and sparse on detail. Opp. at 5. In the context of this case, however, I conclude that the Charges are sufficient to satisfy the exhaustion requirement for both Counts of the Complaint.

The Charges specifically allege that Ms. Reeves: was "being discriminated against because of [her] disability by [her] supervisor" sometime between May 2018 and July 2018, that she complained about that discrimination, and that she was terminated shortly thereafter. Ms. Reeves's Complaint in this Court similarly alleges that she was harassed on the basis of her disability by her supervisor, Ms. Caruth, sometime between her May 1, 2018 start date and her initial termination on July 20, 2018. Compl. ¶¶ 16–20; 37–47. In other words, the allegations of the Charges and the Complaint pertain to the same time frame (May–July of 2018), the same actor (Ms. Reeves's supervisor during that three month period), and the same discriminatory conduct (discrimination based on Ms. Reeves's disability). *Membreno*, 517 F. Supp. at 439; *compare with Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 351 (D. Md. 2021) ("At the very least Byington, even filing

9

pro se, could have informed the investigative agency of whether the perpetrators were managers, co-workers, or any other individual."). Additionally, although there is no question that the Charges more clearly lay out Ms. Reeves's retaliation claim, her alleged complaint regarding Ms. Caruth's harassment is "reasonably related" to her claim that she was terminated in retaliation for that complaint. *Compare with Chacko v. Patuxent Inst.*, 429 F.3d 505, 512 (4th Cir. 2005) ("Reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not be expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling.").

Furthermore, Ms. Reeves's harassment claim constitutes a claim that would be "developed by reasonable investigation of" her related retaliation claim. *Chacko*, 429 F.3d at 506. A reasonable administrative investigation of a retaliatory termination claim under the ADA would certainly include investigation of the protected activity for which the employee was allegedly terminated. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001) ("[T]o establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action."). Here, Ms. Reeves's EEOC Charges indicate that she was discharged in retaliation for complaining that her supervisory had discriminated against her due to her disability. And the Determination—which UM Capital argues is dispositive on the exhaustion issue—reveals that the administrative investigation *did* in fact delve into Ms. Reeves's harassment claim. The Determination states, in relevant part:

> The Complainant submitted a letter to the Human Relations Commission dated July 15, 2018 which she alleged was given to the Respondent prior to her termination that **stated she was being harassed by her Trainer about her disability which caused her to make minor mistakes. The investigation revealed that the July 15th letter the Complainant submitted to the Commission is not the same letter submitted to the Respondent as no record or receipt has been found**. The

10

> investigation did disclose that the Complainant submitted two letters to the Respondent dated July 17 and July 18, 2018 which the Respondent received on July 20, 2018. **In those two letters, the Complainant discussed ongoing verbal attacks by her Trainer . . . but no mention of discrimination**.

(emphasis added).[4]

The excerpted portion of the Determination demonstrates that the administrative investigation led PGHRC to uncover information regarding Ms. Reeves's alleged harassment, and that UM Capital was on notice of the same. Ms. Reeves, therefore, administratively exhausted both her harassment claim and her retaliation claim, and both are appropriately before this Court. Accordingly, UM Capital's Motion to Dismiss Count I of the Complaint must be denied.

## CONCLUSION

For the foregoing reasons, UM Capital's Motion to Dismiss, ECF No. 29, is DENIED.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is hereby ORDERED that:

1. Defendant's Partial Motion to Dismiss Count I of the Plaintiff's First Amended Complaint, ECF No. 29, is DENIED.

---

[4] The parties quibble about the propriety of UM Capital attaching the Determination to its Motion to Dismiss, and whether attaching the Determination converts UM Capital's Motion to Dismiss to a Motion for Summary Judgment. Motion to Dismiss at 5 n. 3; Opp. at 11–12. This Court has concluded on multiple occasions that "EEOC Charge[s] and related documents" are integral to complaints alleging ADA violations and do not convert a motion to dismiss into a Motion for Summary Judgment. *See, e.g., Jacques v. Baltimore City Police Dep't*, No. CV SAG-21-02682, 2022 WL 1061980, at *3 (D. Md. Apr. 8, 2022) ("[F]ederal courts analyzing a motion to dismiss routinely consider EEOC charges and related documents, even if such documents are not filed with the Complaint."); *Gray-Koyier v. Gladding Chevrolet, Inc.*, No. CV RDB-17-1409, 2017 WL 4883144, at *3 (D. Md. Oct. 30, 2017) ("[I]n ruling on Defendant's Motion to Dismiss, this Court will consider Plaintiff's EEOC Charge and related documents."). Because the Motion is not converted, Ms. Reeves's request for discovery under Rule 56(d) is denied is moot.

2. Plaintiff's request for discovery under Rule 56(d) is DENIED AS MOOT.

3. Defendant shall file an amended answer to the Amended Complaint, ECF No. 20, on or before September 13, 2022, after which the Court will enter a Scheduling Order and schedule a Federal Rule of Civil Procedure 16 conference with the parties to discuss further trial proceedings.

Date:   August 23, 2022　　　　　　　　　　　　　_____/S/_____
　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge